UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LISA T.,[1] | ) | 3:20-CV-1764 (SVN) |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, COMMISIONER | ) | |
| OF SOCIAL SECURITY,[2] | ) | June 21, 2022 |
| | ) | |
|    *Defendant*. | ) | |

**ORDER ACCEPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S RECOMMENDED RULING AND REMANDING CASE**

Sarala V. Nagala, United States District Judge.

Plaintiff Lisa T. brings this action pursuant to 42 U.S.C. § 405(g) requesting review of a final decision by the Commissioner of Social Security (the "Commissioner") that denied Plaintiff disability insurance benefits. Currently pending before this Court are Plaintiff's Motion for an Order Reversing the Commissioner's Decision or, In the Alternative, Remanding the Matter for Further Hearing (ECF No. 20), and Defendant's Motion for Order Affirming the Decision of the Commissioner (ECF No. 22). On January 19, 2022, United States Magistrate Judge Robert M. Spector issued a Recommended Ruling denying Plaintiff's motion and granting Defendant's motion. *See* ECF No. 26. Plaintiff filed timely objections to the Recommended Ruling. ECF No. 27. For the reasons that follow, certain of the objections are overruled, but others are sustained. Specifically, the Court disagrees with the Magistrate Judge's recommendation pertaining to the

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] At the time Plaintiff commenced this action, Andrew Saul was the Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and thus replaced former Commissioner Saul as the defendant in this action. *See* Fed. R. Civ. P. 25(d). The Clerk of Court is respectfully requested to amend the caption of the case accordingly.

Administrative Law Judge ("ALJ")'s articulation of the persuasiveness of the medical opinion of Plaintiff's treating physician and, as a result, the ALJ's determination of Plaintiff's residual functional capacity ("RFC"). The Recommended Ruling is accepted in part and rejected in part, and the case is remanded for further proceedings, as described below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the underlying facts. A full statement of the relevant facts can be found in Judge Spector's Recommended Ruling. ECF No. 26 at 2–12. Ultimately, the ALJ found that Plaintiff was not disabled for the purpose of determining entitlement to disability benefits. In this appeal, Plaintiff primarily challenges the ALJ's evaluation of Plaintiff's urinary incontinence issues.

## II. LEGAL STANDARDS

### A. Standard of Review of a Magistrate Judge's Recommended Ruling

If a party makes a timely objection to a Magistrate Judge's recommended ruling in a social security appeal, the district court reviews *de novo* those portions of the recommended ruling to which the objection has been made. The district court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

### B. Entitlement to Disability Insurance Benefits

A person is "disabled" and entitled to disability insurance benefits if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a). In addition, a claimant must establish that her "physical or mental impairment or impairments are of such

severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Social Security Act's definition of disability. *See* 20 C.F.R. § 404.1520. The five steps are best summarized as: "(1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has 'a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509' or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment 'meets or equals' an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the 'meets or equals' requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if the claimant is unable to perform [her] past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of [her] RFC and [her] education, age, and work experience." *Meade v. Kijakazi*, No. 3:20-CV-00868 (KAD), 2021 WL 4810604, at *1 (D. Conn. Oct. 15, 2021); *see also* 20 C.F.R. §§ 416.920(a)(4)(i)–(v). The claimant bears the burden of proof with respect to steps one through four, while the Commissioner bears the burden of proof for step five. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

### C. Review of Commissioner's Decision

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *E.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

"In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The Court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks, citation, and emphasis omitted). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

However, if the Court identifies a legal error in the Commissioner's ruling, it need not examine whether substantial evidence supports the Commissioner's decision. This is because, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

4

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). Thus, legal error may be sufficient grounds on which to remand to the agency for reconsideration, unless "application of the correct legal principles to the record could lead to only one conclusion[.]" *Id. See also Leslie H. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-150 (SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) ("The Court does not reach the second stage of review—evaluating whether substantial evidence supports the [agency's] conclusion—if the Court determines that the [agency] failed to apply the law correctly."); *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *17 (S.D.N.Y. Jan. 29, 2021) ("An [agency's] failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case. . . . A court reviewing an [agency's] decision cannot affirm that decision if it cannot reasonably ascertain whether the correct legal standards were applied, even if the decision may be supported by substantial evidence.") (citations omitted), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (KMW) (KHP), 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

### III. DISCUSSION

#### A. Magistrate Judge's Recommended Ruling

Plaintiff's motion for an order of reversal argues that the ALJ erred in three respects: (1) by improperly evaluating Plaintiff's incontinence at step two and step four, and in failing to develop the record further on this issue; (2) by improperly assessing the opinion of Plaintiff's treating physician, Dr. Broodie-Murray; and (3) by cherry-picking evidence to arrive at the particular result that Plaintiff was not disabled.

5

Judge Spector's recommended ruling ("RR") rejected each of these claims. First, the RR held that the ALJ's failure to identify Plaintiff's incontinence as a severe impairment at step two was, at best, harmless error because the ALJ considered Plaintiff's incontinence along with her other impairments at the subsequent steps of the analysis. ECF No. 26 at 12. Second, the RR upheld, as supported by substantial evidence, the ALJ's assessment at step four that Plaintiff had the residual functional capacity to perform light work with an additional limitation of three unscheduled bathroom breaks during each 8-hour workday, and determined that the record did not need further development on this point. *See* ECF No. 13, Certified Transcript of Administrative Proceedings, dated March 29, 2021 ["Tr."] 20; ECF No. 26 at 12–15. Finally, the RR found that the ALJ was not required to discuss every piece of evidence in the record, ECF No. 26 at 13, and that the ALJ properly evaluated Dr. Broodie-Murray's opinion, ECF No. 26 at 16–22.

B.  Plaintiff's Objections to the Recommended Ruling

Plaintiff timely filed the following objections to Judge Spector's RR: (1) the RR did not fully address Plaintiff's claims that the ALJ cherry-picked evidence to support his conclusion and incorrectly found that Plaintiff's July 18, 2019, MRI results reflected only "mild stenosis"; (2) the RR incorrectly found that the ALJ did not need to further develop the record regarding Plaintiff's incontinence; (3) the RR made incorrect factual findings in reviewing the ALJ's RFC determination; and, if the Court does not reverse or remand based on one of these three objections, (4) the RR also incorrectly engaged in an independent analysis of the regulatory criteria for evaluating Dr. Broodie-Murray's opinion, rather than reviewing the ALJ's analysis of the opinion.

The Court addresses each of these objections using a *de novo* standard of review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In considering the RR, the Court has reviewed the

entirety of the medical record and cites to representative examples of evidence in the record, where necessary, to explain its decision.

### 1. ALJ's Alleged Cherry-picking

The Court overrules Plaintiff's objection to the RR's finding that the ALJ did not cherry-pick evidence to support his conclusion.

Cherry-picking can be defined as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). Cherry-picking can "indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id.* (quoting *Younes v. Colvin*, No. 1:14-cv-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)). But an allegation of cherry-picking is "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). Indeed, what a claimant may label as cherry-picking can often be described "more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

Plaintiff's main argument, in both her motion to reverse and her objections to the RR, is that the ALJ ignored the "two most significant" results of the July 2019 MRI of Plaintiff's back: that she had moderate, not mild, stenosis in one location, and moderate to severe foraminal stenosis. ECF No. 20-1 at 20. Initially, the Court agrees with Defendant and the RR that the ALJ's decision must necessarily cite to selected medical evidence, as it would be quite difficult to fully catalog 2,800 pages of medical records in a succinct, clear fashion. Contrary to Plaintiff's assertions, though, the ALJ's opinion did not cherry-pick only portions of the MRI results to

support its conclusion, *see* Tr. 22, and the RR addressed the MRI results in some detail, *see* ECF No. 26 at 13–14.

Plaintiff takes particular issue with the ALJ's characterization of her stenosis as "mild," which, she argues, demonstrates the ALJ's results-driven approach. Tr. 22. First, it is clear from a review of the MRI results that Plaintiff did have only "mild stenosis" in the L5-S1 area, so, while the ALJ perhaps should have clarified the area of the spine to which the "mild" stenosis finding applied, the ALJ did not fully mischaracterize the MRI results. Tr. 2079. More importantly, though, the ALJ did review and summarize those portions of the MRI results demonstrating more than mild stenosis. The ALJ found:

> A lumbar spine magnetic resonance image (MRI) was taken in July 2019 and it showed **mild to moderate degenerative bilaterally at the L3-4**, **severe facet joint degeneration on the right at the L4-5 and L5-S1 levels, but moderate on the left.**

Tr. 22 (emphasis added). This is the opposite of cherry-picking, as the ALJ clearly considered (and cited) the full MRI results, including the portions that showed Plaintiff suffered from more than mild stenosis. The ALJ also noted that the MRI was undertaken because of Plaintiff's reported lower back pain and incontinence issues. Tr. 22. Thus, Plaintiff's arguments of cherry-picking with respect to the MRI results are unavailing.

Plaintiff's other arguments regarding cherry-picking, including that the ALJ failed to address and discuss Plaintiff's incontinence as an impairment, are essentially duplicative of her remaining objections to the RR and are addressed below.

*2. Further Development of the Record Regarding Incontinence*

The Court next overrules Plaintiff's objection to the RR's holding that the ALJ did not need to further develop the record regarding Plaintiff's incontinence.

The RR correctly held that the ALJ's failure to identify Plaintiff's incontinence as a severe impairment at step two was harmless because the ALJ clearly considered the incontinence at later steps of his analysis. *See* ECF No. 26 at 12 (citing cases). Plaintiff's argument that the ALJ did not discuss her incontinence at step two is technically correct, but the omission does not require remand or reversal because it is clear—as Plaintiff herself concedes, *see* ECF No. 20-1 at 12—that the ALJ considered the incontinence at later steps in his analysis. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding harmless error where ALJ identified other severe impairments and considered impairments, which were not discussed at step two, at subsequent steps); *Lumpkin v. Saul*, No. 3:19-cv-1159 (WIG), 2020 WL 897305, at *3 (D. Conn. Feb. 25, 2020) (noting that an ALJ's erroneous conclusion that an impairment was not severe at step two is harmless error because such error "does not affect the ultimate disability determination").

The RR also correctly held that no further development of the record on the issue of Plaintiff's incontinence was necessary. The ALJ was presented with a comprehensive set of Plaintiff's medical records dating back long before the alleged onset date of her disability in 2018. Tr. 15. As the RR notes, there were several mentions of incontinence in those records, *see* ECF No. 26 at 14–15. Plaintiff was also given an opportunity to submit additional evidence to the Appeals Council for review, but it does not appear she provided any additional evidence that would have further developed the record concerning her incontinence.

In her objection to the RR, Plaintiff further argues that the ALJ should have developed the record concerning what effect, if any, Plaintiff's incontinence had on her admission to the hospital with an "altered mental state" on October 17, 2018. ECF No. 27 at 7; Tr. 1317. On that day, Plaintiff had undergone a consultative examination with a psychologist, during which she was cooperative, but not well-groomed. Tr. 359. Following the examination, Plaintiff reported not

feeling well; because she had soiled herself, appeared to be "going in and out of consciousness," and had "shaky" hands, the psychologist inquired about Plaintiff's consumption of food and insulin that day, as Plaintiff suffered from diabetes. Tr. 117, 359. Plaintiff ultimately was transported by ambulance to the hospital. Tr. 359.

The Court finds that further development of the record concerning this visit was necessary. Adequate records from this incident were already before the ALJ, in the form of hospital admission notes contained in the administrative record. Specifically, the notes indicate that she was "alert and oriented" by the time she arrived at the emergency department, and the physician "suspect[ed] [Plaintiff's] symptoms are secondary to polypharmacy." Tr. 1317. Although the report of the psychologist referenced Plaintiff soiling herself, Tr. 117, the primary symptoms that led to Plaintiff's emergency department visit did not pertain to incontinence. Rather, her mental condition, and potentially her blood sugar, were the cause for concern. Thus, it is not clear that there were any gaps in the administrative record the ALJ was required to fill—particularly since this incident does not appear to be central to Plaintiff's incontinence diagnosis.

### 3. Evaluation of Dr. Broodie-Murray's Opinion

The Court sustains Plaintiff's objection to the RR concerning the ALJ's assessment of Dr. Broodie-Murray's opinion. Specifically, the Court concludes that the ALJ failed to properly articulate the reasons for his conclusions about the opinion's persuasiveness. The Court further concludes that remand is warranted so the ALJ can explain his reasoning and reconsider Plaintiff's RFC under the correct legal standard.

As the RR explains, the new regulations that apply to claims filed on or after March 27, 2017, do not require the ALJ to give any specific weight to any medical opinion, including a treating physician's opinion. Instead, the regulations require the ALJ to apply a codified list of

five factors to determine the persuasiveness of the medical opinion. 20 C.F.R. § 416.920c. The factors are: (1) the supportability of the medical finding; (2) the medical finding's consistency with evidence from other medical sources; (3) the medical provider's relationship with the claimant; (4) the medical professional's specialization; and (5) other factors, such as evidence showing that a medical source has familiarity with the other evidence in a claim or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* § 416.920c(c)(1)–(5). The ALJ must consider all five factors, but the supportability and consistency factors are most important. *Id.* § 416.920c(b)(2).

To that end, the new regulations impose articulation requirements on the ALJ in relation to its consideration of the persuasiveness of a medical opinion. For each medical source in the record, Section 416.920c(b)(2) requires the ALJ to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." As district courts in this circuit have noted, "[a]t their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, pointing to specific evidence in the record supporting those findings." *Briane S. v. Comm'r of Soc. Sec.*, No. 19-cv-1718-FPG, 2021 WL 856909, at *4 (W.D.N.Y. Mar. 8, 2021) (quoting *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021)). "Eschewing rote analysis and conclusory explanations, the ALJ must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (internal quotation marks, citation, and punctuation omitted).

The ALJ may also, but is not required to, explain the third, fourth, and fifth factors. *Id.* § 416.920c(b)(2). If the ALJ concludes that two or more medical opinions about the same issue are "both equally well-supported" and "consistent with the record," but are not exactly the same, then the ALJ must articulate any conclusions reached about persuasiveness related to the third, fourth, and fifth factors from Section 416.920c(c)(3)–(5), in addition to articulating conclusions about supportability and consistency.

> The ALJ's evaluation of Dr. Broodie-Murray's opinion was as follows:
>
> Niko Broodie-Murray, M.D. submitted a medical source statement about the claimant's physical work-related abilities. Dr. Broodie-Murray opined that the claimant could occasionally lift up to 20 pounds and carry up to 10 pounds. The claimant could sit up to two hours and stand/walk up to an hour. The claimant requires a cane to ambulate, can walk one to two steps without the cane, and would be absent four or more days a month, and off-task 10 to 20 percent of the day; she could frequently reach, handle, finger and feel bilaterally but only occasionally push/pull. The claimant could only occasionally operate foot controls bilaterally. She could occasionally climb ramps/stairs but never any other postural activity. Furthermore, Dr. Broodie-Murray wrote the claimant could not differentiate sizes/shapes, understand simple instructions, work at a reasonable pace, or walk on uneven or rough surfaces. (Exhibit B16F). This is not persuasive. Aside from the lifting and carrying limitations, use of a cane for walking, occasional[l]y climbing ramps and stairs, and pushing/pulling with the left upper extremity, these limitations either are not supported by objective medically determinable impairments and/or are contrary to the treatment notes and examinations of the claimant. Also, the extreme limitations Dr. Broodie-Murray opined are inconsistent with notes from the treating facility.

Tr. 24. Plaintiff contends that the ALJ failed to sufficiently articulate his reasons for finding portions of Dr. Broodie-Murray's opinion unpersuasive as required by the new regulations. Plaintiff further argues that the RR engaged in an independent analysis of the persuasiveness of the opinion, rather than reviewing the ALJ's analysis.

The Court agrees with Plaintiff. The ALJ's findings as to supportability and consistency are wholly conclusory and insufficient to adequately explain the ALJ's conclusions. Consequently, it is clear that the ALJ did not follow the articulation requirements of Section

12

416.920c, which amounts to legal error warranting remand. After describing Dr. Broodie-Murray's opinion regarding Plaintiff's limitations, the ALJ summarily found her opinion not persuasive. The sum total of the ALJ's analysis is that the limitations are "not supported by objective medically determinable impairments and/or are contrary to the treatment notes and examinations of the claimant," and that the "extreme limitations . . . are inconsistent with notes from the treating facility." Tr. 24. This type of conclusory statement is insufficient to satisfy the articulation requirements of Section 416.920c(b)(2). *See Brianne S.*, 2021 WL 856909, at *5 ("Where an ALJ merely states that an examining physician's opinion is not consistent with the overall medical evidence, he has failed to adequately explain his conclusions regarding the consistency factor.") (internal quotation marks and punctuation omitted); *Robert T.S., Jr. v. Comm'r of Soc. Sec.*, No. 5:21-CV-38 (CFH), 2022 WL 1746968, at *11 (N.D.N.Y. May 31, 2022) (holding that the ALJ's "conclusory sentence" that a medical opinion unfavorable to the plaintiff was "consistent with the objective medical evidence" was "insufficient for meaningful judicial review"); *Raymond M.*, 2021 WL 706645, at *9 (remanding where the ALJ's "inadequate explanation for [his] reliance on [one doctor's] non-examining opinion clearly [left] pertinent questions unanswered"); *Johnson*, 817 F.2d at 986 (under the rule in effect prior to adoption of the new regulations, remanding because the court "[could not] ascertain whether [the ALJ] applied the correct legal principles" due to "the lack of specificity" of the ALJ's decision).

In particular, the ALJ summarily discarded Dr. Broodie-Murray's opinion that Plaintiff would be absent four or more days a month, and off-task 10 to 20 percent of the day—findings that Plaintiff claims would result in an entitlement to benefits—without citing to any contradictory evidence in the record. The absence of "clear discussion" of the evidence implicating the supportability or consistency (or lack thereof) of Dr. Broodie-Murray's opinion "frustrates

13

meaningful review." *Nicole L. v. Kijakazi*, No. 6:20-CV-1576 (NAM), 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022). *See also Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *17 (S.D.N.Y. Dec. 30, 2020) (recommending remand where the ALJ "failed adequately to explain the supportability or consistency factors upon which he relied to find [the doctor's] opinion persuasive" in light of other specific evidence in the record not cited by the ALJ), *report and recommendation adopted*, No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

Additionally, given that Dr. Broodie-Murray is Plaintiff's treating physician, it is curious that the ALJ found the opinion to be inconsistent with "notes from the treating facility." The ALJ did not reference any specific notes from the "treating facility" on which he based his conclusion, so it is unclear on what evidence this finding was based. Remand is thus necessary. *Robert T.S., Jr.*, 2022 WL 1746968, at *11 (remanding where the ALJ found a medical opinion inconsistent with unspecified "examinations" without citing "to a single treatment record"). *See also Acosta Cuevas*, 2021 WL 363682, at *15 (remanding where the ALJ credited state agency examiners' medical opinions without explaining "what the [state agency examiners] used to support their opinions and reach their ultimate conclusions" or citing any records from the clinic where the plaintiff received treatment); *Jackson v. Kijakazi*, No. 20-CV-7476 (JLC), 2022 WL 620046, at *18–19 (S.D.N.Y. Mar. 3, 2022) (remanding where the ALJ's finding of persuasiveness was conclusory and did not "identify the specific objective findings" on which he relied or compare the medical opinion "to other, specific evidence" in the record); *Raymond M.*, 2021 WL 706645, at *10 (remanding where it was "unclear" what evidence supported the ALJ's assessment of a medical opinion's consistency with the record, "[b]eyond vague references to the overall record").

Moreover, the ALJ found certain parts of Dr. Broodie-Murray's opinion persuasive, but did not make an effort to explain why other parts were not. Certainly, it is permissible for an ALJ to "rely more heavily on certain aspects of a medical opinion over others, [but] 'an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently.'" *Pamela P.*, 2020 WL 2561106, at *6 (quoting *Dowling v. Comm'r of Soc. Sec.*, No. 5:14-CV-786 (GTS/ESH), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015)).

It is clear to this Court that the ALJ did not follow the requirements of Section 416.920c, as it did not sufficiently articulate the basis for its conclusions about the persuasiveness of Dr. Broodie-Murray's opinion. Thus, remand is required. *E.g.*, *Rivera*, 2020 WL 8167136, at *17 ("Because the ALJ has failed adequately to explain the supportability or consistency factors upon which he relied to find [the medical opinion] persuasive, remand is required."); *Nicole L.*, 2022 WL 160274, at *10 ("In general, remand is appropriate for Social Security claims when further findings and development of the record would help to assure proper disposition of the claims. . . . Consequently, remand is necessary for the ALJ to reconsider [the doctor's] opinions and Plaintiff's overall RFC."); *Jackson*, 2022 WL 620046, at *20 ("Remand is appropriate when the ALJ failed to apply the correct legal standard, including adequately considering and applying the new regulatory factors."). The Court likewise agrees that remand is necessary to ensure that Plaintiff's disability determination is made according to the correct legal principles. *See Johnson*, 817 F.2d at 986.

Notably, this outcome is contrary to the Magistrate Judge's recommendation. As Plaintiff notes, the RR does an independent (and much more robust) analysis of the supportability and consistency of Dr. Broodie-Murray's opinion. The RR appears to essentially conclude that, even though the ALJ did not properly articulate its conclusions about the persuasiveness of Dr. Broodie-

15

Murray's opinion, any such error was harmless because substantial evidence supported the ALJ's conclusions that portions of the opinion were persuasive and others were unpersuasive. The Court disagrees with this conclusion for two reasons.

First, this Court joins those that decline to "engage in substantial evidence review to determine if the legal errors were harmless." *Acosta Cuevas*, 2021 WL 363682, at *16; *Brianne S.*, 2021 WL 856909, at *5. The ALJ's conclusory statements regarding the supportability and consistency of Dr. Broodie-Murray's opinion are insufficient to support "meaningful judicial review." *Robert T.S., Jr.*, 2022 WL 1746968, at *12. It may be the case that there are articulable reasons why the ALJ did not find Dr. Broodie-Murray's opinion persuasive. *See* Tr. 2795–99. But without a more fulsome explanation of why the ALJ rejected portions of Dr. Broodie-Murray's opinion, the Court is not in a position to review whether the ALJ's conclusions are supported by substantial evidence. *See Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *10 (N.D.N.Y. Oct. 1, 2020) (concluding that the ALJ's "inadequate review" of the medical record failed to set forth its supportability and consistency findings "with sufficient specificity to allow the Court to determine whether substantial evidence supported the assigned persuasiveness of" the medical opinions "in accordance with the regulations"); *Arroyo v. Kijakazi*, No. 3:20cv-1750 (MPS), 2022 WL 891647, at *1 (D. Conn. Mar. 25, 2022) (noting that the Court cannot "supply post-hoc rationalizations for the ALJ's decision").

Nor does the record compel only the conclusion drawn by the ALJ and, ultimately, the RR. *See Johnson*, 817 F.2d at 986 (noting that the application of erroneous legal principles would be harmless if the record compelled only one conclusion). The RR notes that Dr. Broodie-Murray did not complete all the questions on a check-box form she used when evaluating Plaintiff. Of course, the mere fact that Dr. Broodie-Murray used a check-box form is insufficient, standing

alone, to discount her opinion. *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert"). And pertinent questions remain about whether the medical record supports and is consistent with Dr. Broodie-Murray's findings. *See Raymond M.*, 2021 WL 706645, at *9. For instance, the RR contrasted Dr. Broodie-Murray's findings that Plaintiff could not sit for more than two hours, Tr. 24, with Plaintiff's testimony that she sat while attending a family function in New York, Tr. 55–56. But Plaintiff was not asked about the length of time she sat to watch the events at the family function. Additionally, the RR noted that Plaintiff was not homebound, did her own grocery shopping, and attended parties, which the RR stated conflicted with Dr. Broodie-Murray's findings that Plaintiff could not stand or walk for more than an hour or engage in any other postural activity other than occasional ramp climbing and stairs. ECF No. 26 at 20. But while it does appear Plaintiff was not homebound, the record also reflects that she used a motorized cart at the grocery store and that she has a "hard time getting out." Tr. 58. Dr. Broodie-Murray's notes also reflect that, during an office visit in July of 2018, Plaintiff suffered from shortness of breath and dizziness, which could support the findings concerning limitations on postural activity. Tr. 344–45. The Court further notes that: (1) Plaintiff appeared unable to follow the instructions to take all of her medications, Tr. 1354, 1359, 2085, which may have supported Dr. Broodie-Murray's assessment that Plaintiff could not follow simple instructions; and (2) that Plaintiff's frequent urinary incontinence, to which she testified at the hearing, could have supported Dr. Broodie-Murray's finding that Plaintiff would be off-task for 10 to 20 percent of the day, Tr. 2795–99. Therefore, the Court cannot find that the record compels only one conclusion.

Moreover, the RR did not consider the possibility that any legal error might have impermissibly tainted the ALJ's subsequent RFC determination. *See Andrew G.*, 2020 WL 5848776, at *8 (noting the tainting effect of the ALJ's inadequate review). Absent further articulation by the ALJ, it is difficult to ensure that the RFC determination was not tainted by preceding legal error. For these reasons, the Court is not equipped to find the ALJ's legal errors harmless.

The Court is also not convinced by the RR's interpretation of 20 C.F.R. § 416.920c(b)(3). By way of citation to this subsection, the RR seems to suggest that an articulation of the supportability and consistency of Dr. Broodie-Murray's opinion is not required because her opinion was not as consistent and well-supported as the state agencies' consultants' opinions. Specifically, the RR noted that Dr. Broodie-Murray's opinion "is not as 'equally well-supported as the state agencies' consultants' opinions because Dr. Broodie-Murray's limitations are not consistent with the record." ECF No. 26 at 20. Then, after contrasting Dr. Broodie-Murray's opinion with some evidence in the record and a consultative mental evaluation report, the RR concluded that "the ALJ was not required to cite with specificity what he relied on in determining the persuasiveness of Dr. Broodie-Murray's opinion because this opinion was, at a baseline, not supported by evidence in the record." *Id.* at 22.

The RR appears to misinterpret Section 416.920c(b)(3) as dispensing with the articulation requirements for supportability and consistency when a court finds that two opinions are not equally well-supported. That is a misstatement of the law. As noted above, for each medical source in the record, Section 416.920c(b)(2) *requires* the ALJ to articulate findings as to the supportability and consistency factors, enumerated in paragraphs (c)(1) and (c)(2). Section 416.920c(b)(2) further provides that the ALJ "*may*," but is not required to, articulate its findings

as to the three additional factors enumerated in paragraphs (c)(3) through (c)(5)—relationship to the claimant, specialization, and other factors. However, when the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record, the ALJ *must* articulate its findings as to the three additional factors enumerated in paragraphs (c)(3) through (c)(5). 20 C.F.R. § 416.920c(b)(3).

The Court does not read Section 416.920c(b)(3) as relieving the ALJ of the threshold obligation to articulate the medical opinion's supportability and consistency, as the RR suggests; to the contrary, Section 416.920c(b)(3) appears to add, rather than remove, additional articulation requirements in certain circumstances. The predicate requirement of articulating the supportability and consistency of a medical opinion remains in place. *See* 20 C.F.R. § 416.920c(b)(2). The Court is unable to locate any provision of Section 416.920c, or any controlling court decision, that suggests Section 416.920c(b)(3) somehow dispenses with an ALJ's obligation to articulate its reasoning about supportability and consistency when a court finds that the medical opinion at issue is not as equally supported as another medical opinion. The RR cites to no authority to support this proposition. The RR's finding that the ALJ was not required to cite with specificity what he relied on in determining the persuasiveness of Dr. Broodie-Murray's opinion is therefore rejected.

### 4. *RFC Determination*

Given the Court's holding that the ALJ did not sufficiently articulate his reasons for rejecting portions of the medical opinion of Dr. Broodie-Murray, it follows that the Court must sustain Plaintiff's objection to the ALJ's determination that Plaintiff has the RFC to perform light work, with some additional restrictions. Specifically, because the ALJ determined the RFC by, in part, rejecting some of Dr. Broodie-Murray's assessments without sufficient explanation, the RFC determination cannot stand. *See Nicole L.*, 2022 WL 160274, at *10 (remanding with instructions

for the ALJ to reconsider the medical opinion at issue as well as the plaintiff's "overall RFC"); *Rivera*, 2020 WL 8167136, at *22 (remanding with instructions for the ALJ to consider his RFC formulation "in light of all of the opinion evidence he has found persuasive"). On remand, after reconsidering Dr. Broodie-Murray's assessments and fully articulating their persuasive value under the criteria of the regulations, the ALJ should revisit the question of Plaintiff's RFC.

## IV. CONCLUSION

For the reasons described above, the Recommended Ruling is accepted in part and rejected in part. Plaintiff's motion for an order reversing the Commissioner's decision or, in the alternative, remanding the matter is GRANTED IN PART AND DENIED IN PART. Specifically, it is denied insofar as it seeks an order reversing the Commissioner's decision and granted insofar as it seeks remand to the agency. Defendant's motion for an order affirming the Commissioner's decision is DENIED. The case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED** at Hartford, Connecticut, this 21st day of June, 2022.

      */s/ Sarala V. Nagala*
      SARALA V. NAGALA
      UNITED STATES DISTRICT JUDGE